*58 OPINION.
Van Fossan :
The sole question presented in this case is the determination of the fair market value on March 1, 1913, of the shares of common stock of the Firestone Tire & Rubber Co. sold by the petitioners in 1927 and 1928. The respondent asserts that his action in fixing that value at $310.24 per share should not be disturbed. The petitioners contend that such value was at least $609.61 per share.
Section 204 (b) of the Revenue Act of 1926, identical in form and context with section 113 (b) of the Revenue Act of 1928, is as follows:
The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (A) the cost of such property * * * or (B) the fair market value of such property as of March 1, 1913, whichever is greater. In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date.
Article 1591, Regulations 69, identical with article 591, Regulations 64, provides as follows:
What the fair market value of property was on March 1, 1913, is a question of fact to be established by competent evidence. In determining the fair market value of stock in a corporation, due regard shall be given to the fair market value of the corporate assets on the basic date. In the case of property-traded in on the public exchanges, actual sales on or about the basic date afford evidence of value, but in each case the nature and extent of the sales and the circumstances under which they were made must be considered. Those prices received at forced sales or prices received for small lots of property may be no real indication of the value of the property.
*59 In James Couzens, 11 B.T.A. 1040, we had before us the problem of determining the fair market price or value of the stock of the Ford Motor Co. on March 1, 1913. In that case we said:
While we have not arrived at this value by the application of any mathematical formula, because we believe that there is no authoritative formula available, we have given careful consideration to the several methods suggested in the course of the trial, and have not been unmindful of the aid to be derived from the use of such tests. The comparative studies which have been submitted of the Ford Company and numerous other industrial corporations, from which the market value of the Ford stock has been deduced were in some instances found to be of little help because they involved assumptions or collateral matters which were not cognizable here, or were based on unsubstantiated hypotheses, or for other reasons were found of little weight. We think it would unjustifiably deflect this opinion from its proper course to set forth a critical analysis of all of the evidence and methods by which the numerous witnesses arrived at their various opinions as to value.
And in the concurring opinion in that case it was said:
Passing to the question of a proper valuation on March 1, 1913, of the Ford stock, we engage ourselves in an undertaking which is at once complex and simple. Complex in the factors and formulae that are presented for consideration and simple in the realization that, in its essence, the determination of value is merely a matter of judgment. Many factors must be weighed, and in this process various theories and formulae may be employed, but in the end the value determined on must comport with sound and well reasoned judgment. It follows that the accuracy of the valuation is directly proportionate to the soundness of the judgment.
Under the conditions set forth in the findings of fact we do not deem the few scattered sales of Firestone stock in small lots to be conclusive of fair market value. Firestone was distinctly a close corporation, the Firestone family owning a large part of its stock. No statement of the company’s assets, volume of business, earnings, actual or potential market or other facts vital to its financial condition had been given or was available to the public, banks, stockholders, or anyone not within the inner circle of its officers and directors. During the first four months of 1913 only 22 sales, aggregating 235 shares, were recorded in the Cleveland Stock Exchange. The strike in the rubber plants in Akron in February and March 1913, had a depressing effect on the prices of stock in tire companies and particularly on the few transactions in the Firestone stock. Neither the volume of the sales nor the attendant circumstances were sufficient to establish a fair market. In view of this situation we must examine other factors to arrive at the proper fair market value.
We find several unique facts in the record which convince us that the fair market value was much greater than the price at which a few shares of stock were sold at par or near March 1,1913. Harvey *60 Firestone and Henry Ford were warm friends. Their business association likewise was unusually close. Firestone consistently furnished Ford with over half of his tire needs. He was in constant and intimate touch with Ford’s business policies and his projected plans for expansion. On March 1, 1913, the Firestone Co. knew what would, in all probability, be required from Ford and accordingly provided for its own anticipated increase in business and earnings. Its subsequent deliveries to Ford show clearly that its expectations were amply justified.
At the same time Firestone was engaged in perfecting and placing on the market in substantial quantities its nonskid tires and demountable rims, in the production of both of which it was the pioneer among tire and rim manufacturers. The marked increase in the sales of these two articles also reflects the reasonableness of Firestone’s belief that the public demand for them would be strong.
In arriving at our conclusion we must give due regard to certain other unusual practices of Firestone which served to enhance the fair market value of its stock. The company’s assets were carried on its books at an unwarranted low figure, so low in fact, that in 1916, after an appraisal a sharp upward revision was required and made. Contributing to this situation was the fact that Firestone had taken excessive depreciation on its physical assets. Such depreciation was later reduced by the respondent and was reflected in Firestone’s increased income during the period in which such depreciation had been taken. Furthermore, Firestone had never carried as assets such valuable intangibles as patents, good will, etc. No appraisal or valuation of such intangibles was presented to us, but their possession by Firestone may properly be taken as a factor in arriving at fair market value.
The character and ability of Firestone’s management also has an important bearing on our problem. It was described as “ outstanding.” The organization was young and virile, headed by Harvey Firestone, a young man of large experience in the tire industry. The officers of the company were constantly on the alert to invent, discover and develop improvements in their products and methods of manufacture as well as to reduce the cost of production and distribution. On March 1, 1913, they had forseen the probable great growth of their business and were making their plans accordingly.
Under the foregoing circumstances we are convinced that the fair market value of common stock of the Firestone Tire & Itubber Co. on March 1,1913, was at least $550 per share and we so determine.

Decision will be entered under Bule SO.